UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IN RE AOL, INC. REPURCHASE OFFER        :   12 Civ. 3497 (DLC)
LITIGATION                              :
                                        :   OPINION AND ORDER
----------------------------------------X

APPEARANCES:

For defendants:

Jonathan M. Moses
Adam M. Gogolak
Michael J. McDuffie
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019

For plaintiff:

Peter C. Harrar
Beth A. Landes
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016


DENISE COTE, District Judge:

    In an Opinion and Order of August 19, 2013, the Court granted defendants' motion to dismiss this case and directed the Clerk of Court to enter judgment for the defendants. In re AOL, Inc. Repurchase Offer Litig., --- F. Supp. 2d ---, 2013 WL 4441516 (S.D.N.Y. 2013). Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), courts are required to make specific findings as to the compliance by all parties and attorneys with Rule 11(b), Fed. R. Civ. P., at the

conclusion of all private actions arising under the Securities Exchange Act of 1934, as does this one.  15 U.S.C. § 78u-4(c); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 152 (2d Cir. 2009).  This Opinion concludes that plaintiff's counsel must be sanctioned for filing a frivolous complaint.

BACKGROUND

On April 9, 2012, AOL announced the sale of a patent portfolio to Microsoft for $1.056 billion in cash.  News of the sale caused the price of AOL's stock to jump 43% in a single day.  Less than a month later, on May 3, the Rosenfarb Law Firm filed this action.  At a conference on August 10, 2012, Barbara Keeling was appointed Lead Plaintiff of the putative class and Wolf Haldenstein was selected as Lead Counsel.  Wolf Haldenstein filed a consolidated complaint on September 28.

In contrast to the original complaint, which made vague and conclusory allegations about an effort by AOL to sell its portfolio of patents, this new consolidated complaint introduced a clear theory of fraud.  It claimed, in essence, that AOL had conducted a sham auction of the patent portfolio to disguise the fact that it had months earlier agreed to sell the patents to Microsoft.  The consolidated complaint alleged that the purpose of this dissimulating was to keep AOL's stock price depressed while the company completed a repurchase program under which it

acquired approximately 14.8 million shares of its own stock, stock that became much more valuable when the news of the patent sale was revealed.

The principal source for this theory was a blog post written by Mark Stephens under the pen name Robert X. Cringely. Among the allegations in the pleading was the assertion that "during the fall", before the spring sale of the portfolio, AOL's Armstrong had called Microsoft's CEO Steve Ballmer "to spur Microsoft's long-held interest in acquiring the Patent Portfolio and to close the deal".  Similar allegations were sprinkled through the pleading.

On October 26, 2012, the defendants moved to dismiss the consolidated complaint.  They complained about the implausibility of the complaint's theory and the lack of support for it, as well as its reliance on the blog post.  While the plaintiff's opposition to the motion reiterated support for the "secret deal" theory, the plaintiff did not provide any source for the allegation that Armstrong and Ballmer closed the deal in a telephone call months before the auction.  Instead, plaintiff insisted that the complaint "does not rely on Stephens' blog for its factual allegation that a secret deal was reached with Microsoft," and instead argued that the secret deal theory was "a fair inference."

An Order of January 4, 2013, gave the plaintiff a final opportunity to amend her complaint, of which the plaintiff took advantage.  On January 18, the plaintiff filed an amended consolidated complaint (the "Amended Complaint").  The Amended Complaint continued to rely on the blog and to press the theory of a secret, undisclosed deal between AOL and Microsoft.  It alleged that AOL had selected Microsoft to buy the portfolio "well before" the beginning of the auction process, and that AOL's Armstrong had contacted Microsoft's Ballmer during the fall of 2011 "to close out" AOL's expectation that Microsoft would acquire the portfolio and to "close the deal."

The defendants renewed their motion to dismiss on February 1, noting again that the plaintiff still identified no support for the allegation that Armstrong and Ballmer had reached a secret deal by telephone.  In opposing the motion, the plaintiff disclosed for the first time that the source for this allegation was an April 9, 2012 news report from Reuters.

The Reuters story did not provide support for the allegations about the telephone call or the secret deal.  It generally described the sales process as a genuine auction and reported that bids had been received from Amazon, eBay, Google, and Facebook, with the final buyer selected "late on April 5." The article's only mention of the telephone call was its statement that "Armstrong said he made a call to [Ballmer]

4

alerting him of the decision to sell the patents." The Reuters story thus fell far short of supporting an allegation that the conversation had occurred in the fall, that is, months before the auction, or that the men had closed any deal during the conversation. In fact, the article directly contradicts such an account, as it indicates only that Armstrong told Ballmer that AOL had decided to sell the patents. The article also described a vigorous auction process with a final buyer selected on April 5.

Defendants' motion to dismiss was granted in an Opinion & Order of August 19. In the Opinion & Order, the Court found that the "allegation that Armstrong placed one telephone call to Ballmer to 'close the deal' is recklessly made without any factual support." 2013 WL 4441516, at *7. It added that "[n]o fair reading of the article suggests that a call was made to 'close' a secret deal in advance of the auction." Id. at *7 n.3. An Order issued that day required the plaintiff to address whether sanctions should not be imposed pursuant to the PSLRA.

## DISCUSSION

Rule 11(b), Fed. R. Civ. P., provides that

> [b]y presenting to the court a pleading . . . an attorney . . . certifies that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the factual contentions have evidentiary support or, if

5

>specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Rule 11 thus imposes on attorneys "an affirmative duty to conduct a reasonable inquiry into the facts and the law." Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991). "Since the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers." ATSI, 579 F.3d at 150 (citation omitted). The "PSLRA obviates the need to find bad faith prior to the imposition of sanctions," id. at 152, and indeed reflects a desire by Congress to "punish abusive litigation severely." Gurary v. Nu-Tech Bio-Med, Inc., 303 F.3d 212, 222 (2d Cir. 2002). Nevertheless, courts must "ensure that any sanctions decision is made with restraint," Storey v. Cello Holdings, LLC, 347 F.3d 370, 387 (2d Cir. 2003) (citation omitted), as "Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy." Kiobel v. Millson, 592 F.3d 78, 83 (2d Cir. 2010) (citation omitted).

Rule 11(b)(3), which requires that all "factual contentions have evidentiary support," is violated where "after reasonable inquiry, a competent attorney could not form a reasonable belief

6

that the pleading is well grounded in fact."  Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted).  "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement," Kiobel, 592 F.3d at 83, and an erroneous statement of fact in a pleading "can give rise to the imposition of sanctions only when the particular allegation is utterly lacking in support."  Id. at 81 (citation omitted).

In its opening submission addressed to the issue of sanctions, which is presented in the form of proposed findings of fact and conclusions of law, the plaintiff largely ignores the core issues here.  It does not directly address the source of the conspiracy theory, the reliance on the blog, or the infirmities of the allegations regarding the call between Armstrong and Ballmer.  It provides essentially no basis to find that sanctions should not be imposed.  In an accompanying declaration, Peter Harrar, who signed the consolidated complaint, states that he did not "intend to imply that the terms of the deal were finally set in that call."  Harrar stresses that the word "close" was intended to "show efforts to move to a close of Microsoft's plan to purchase the Patent Portfolio, or to close AOL's plan to monetize the intrinsic value of the Patent Portfolio, rather than the transaction's actual closing at a finally determined price."

In his reply, plaintiff's counsel contends that the use of the phrase to "close the deal" was only intended to convey that the call to Ballmer was made "to bring the <u>plan</u> into fruition," that is, a plan to monetize AOL's patent portfolio. Plaintiff's counsel admits that this was "perhaps a broad interpretation" of the Reuters news article, but one that fell within the bounds of vigorous advocacy. Counsel also asserts that his pleading was not actually that the auction was a sham: "It is not strictly what Plaintiff was arguing." Counsel explains that they were only seeking to allege that AOL designed an auction process to favor Microsoft and its superior knowledge of the patent portfolio. Neither of these arguments has merit.

This interpretation of the phrase "close the deal" is belied by both the overall theory and particular language of the Amended Complaint, the thrust of which is unmistakably that AOL and Microsoft reached a deal that AOL kept secret in order to repurchase its stock at an artificially deflated price and later covered up with a sham auction. Indeed, the Amended Complaint alleges that "AOL had already committed to a plan to sell its Patent Portfolio to Microsoft, and was actively bringing to fruition the sale in secret, while benefitting from the artificially low price of AOL stock." The Amended Complaint elsewhere alleges that "defendants had already committed to a plan to sell AOL's valuable Patent Portfolio and had selected

Microsoft as purchaser" and that "Armstrong had called [Ballmer] to <u>close out</u> Microsoft's long-anticipated plan to acquire the Patent Portfolio."  (Emphasis added).  These allegations appear throughout the Amended Complaint in similar language.

It is not possible to square the allegations that the purpose of the call was to "close out" Microsoft's plan to acquire the patents, or that Microsoft was the "inevitable purchaser," or that defendants "had selected Microsoft as purchaser," with counsel's current insistence that the Amended Complaint was "not about an undisclosed deal" but rather only "an undisclosed expectation."  The secret deal theory, including the allegation concerning the telephone call, was plainly at the heart of the plaintiff's case, and the recent submissions by counsel demonstrate that this theory was "utterly lacking in support."  <u>Kiobel</u>, 592 F.3d at 81.  Notably, counsel has not cited any evidence that this telephone call even occurred in the fall, let alone that it resulted in a secret determination that Microsoft would purchase the patents.  Indeed, the only factual support for the mere <u>existence</u> of the telephone call blatantly contradicts any such suggestion, as it reports that the purpose of the call was to "alert[] [Ballmer] of the decision to sell the patents."

Counsel also attempts to downplay the allegations regarding the auction, insisting that the word "sham" was never used and

9

that the Amended Complaint alleged only that the auction "was designed to favor Microsoft" and that Microsoft was merely "the advantaged bidder and expected winner." Again counsel mischaracterizes its own complaint. It is true that the Amended Complaint stops short of using the word "sham." It does, however, repeatedly refer to the auction as a "putative" auction and allege that it "strains credulity" to suggest "that this was a full-fledged open auction." The Amended Complaint also suggests that Goldman Sachs placed a bid for the patents (an allegation drawn solely from the Cringely blog post) and then argues that Goldman Sachs was "a strategic partner of Microsoft, acting to portray a private transaction as a public auction." This allegation, that an auction in which several major tech companies were widely reported to have placed bids was actually a "private transaction" with a "designated buyer" is also utterly lacking in factual support.

Counsel also argues that the unsupported allegations regarding the telephone call between Armstrong and Ballmer and the auction were "de minimis" and that a complaint is not "fully sanctionable" under the PSLRA unless it contains a "substantial failure to comply with . . . Rule 11(b)." Gurary, 303 F.3d at 215 (citation omitted). To the extent counsel relies on Gurary to argue against the imposition of sanctions rather than to dispute their magnitude, it relies on a misreading of that case,

10

which addressed only the proper amount of sanctions that should be imposed and not whether sanctions were appropriate.  <u>Id</u>. at 219.  Indeed, the PSLRA provides that "'for <u>substantial</u> failure of any complaint to comply with any requirement' of Rule 11(b), the award shall be the full amount of the reasonable attorneys' fees and costs."  <u>Id</u>. at 215 (quoting 15 U.S.C. § 78u-4(c)(3)(A)).  Indeed, the relevant subsection of the PSLRA reads "mandatory sanctions:  If the court makes a finding . . . that a party or attorney violated any requirement of Rule 11(b) . . . the court shall impose sanctions."  15 U.S.C. § 78u-4(c)(2).  At any rate, counsel's suggestion that the violations here were de minimis is entirely unconvincing.  As discussed above, the unsupported factual allegations lay at the heart of the Amended Complaint.

## CONCLUSION

The Court therefore finds that counsel has violated Rule 11 by making factual allegations that are "utterly lacking in support," Kiobel, 592 F.3d at 81, and that sanctions must be imposed. 15 U.S.C. § 78u-4(c)(2). A separate Order will address the process for setting the amount of the sanctions that will be imposed.

SO ORDERED:

Dated:   New York, New York
         December 5, 2013

```
        _____
               DENISE COTE
        United States District Judge
```